**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **CHRIS deLEON** ) | |
| 900 Wayne Avenue #7245 ) | |
| Silver Spring, MD 20910 ) | |
| ) | Case No. 1:19-cv-1250 |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| **ROBERT WILKIE** ) | |
| **SECRETARY, DEPARTMENT OF** ) | **JURY TRIAL DEMAND** |
| **VETERANS AFFAIRS** ) | |
| 810 Vermont Avenue, NW ) | |
| Washington, DC 20420 ) | |
| ) | |
| and ) | |
| ) | |
| **ROBYN HARDY** ) | |
| **CHIEF OF POLICE** ) | |
| **VETERANS ADMINISTRATION** ) | |
| **MEDICAL CENTER** ) | |
| 50 Irving Street, NW ) | |
| Washington, DC 20310 ) | |
| ) | |
| and ) | |
| ) | |
| **STANLEY STANTON** ) | |
| **ASSISTANT MEDICAL DIRECTOR** ) | |
| **VETERANS ADMINISTRATION** ) | |
| **MEDICAL CENTER** ) | |
| 50 Irving Street, NW ) | |
| Washington, DC 20310 ) | |
| ) | |
| and ) | |
| ) | |
| **ELTON ARTIS** ) | |
| **ACTING DEPUTY CHIEF OF POLICE** ) | |
| **VETERANS ADMINISTRATION** ) | |
| **MEDICAL CENTER** ) | |
| 50 Irving Street, NW ) | |
| Washington, DC 20310 ) | |
| ) | |
| ) | |
| *Defendants*. ) | |

1

**COMPLAINT**

Plaintiff Chris deLeon, by and through counsel, hereby files this Complaint for violations of the First and Fifth Amendments to the United States Constitution and the Privacy Act, 5 U.S.C. § 552a, against Defendant Robert Wilkie, Secretary, United States Department of Veterans Affairs ("VA") and Defendants Robyn Hardy, Stanley Stanton and Elton Artis, officials at the Veterans Administration Medical Center ("VA Medical Center"), Washington, D.C.

**JURISDICTION AND VENUE**

1. This court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and 5 U.S.C. § 552a. Plaintiff seeks monetary damages against a federal employee acting under color of legal authority, in their individual capacities, under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 28 L.Ed.2d 619 (1971). Plaintiff seeks actual damages as well as fees and costs against the VA for the intentional and willful violation of the Privacy Act, 5 U.S.C. § 552a(g)(5). The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S. C. § 2201 *et seq*. The Court has authority to grant injunctive relief under the federal courts' inherent equitable powers.

2. Plaintiff has exhausted all administrative remedies prior to filing suit.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(e) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants may be found in this judicial district.

**PARTIES**

4. Plaintiff Chris deLeon is an African American male, a U.S. citizen, and a resident of the State of Maryland. He works as a police officer with the VA Medical Center in

Washington, D.C. As a result of Defendants' unconstitutional, illegal and unethical actions, Plaintiff deLeon is currently unemployed.

5. Robert Wilkie (hereinafter "Defendant" or the "Agency") is the Secretary of the U.S. Department of Veterans Affairs ("VA"), an administrative agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings his claims. Defendant Robyn Hardy, Chief of Police, Veterans Administration Medical Center ("VA Medical Center"), Washington, D.C., is being sued in her individual capacity. Defendant Stanley Stanton, Assistant Medical Director, VA Medical Center, Washington, D.C., is being sued in his individual capacity. Defendant Elton Artis, Acting Deputy Police Chief, VA Medical Center, Washington, D.C., is being sued in his individual capacity.

## FACTUAL ALLEGATIONS

6. Plaintiff deLeon began employment as a Federal Police Sergeant with the VA Medical Center at 50 Irving Street, NW, Washington, D.C. 20310 in May 2017. Plaintiff deLeon's position required him to carry a service weapon.

7. Shortly after he began employment, Plaintiff deLeon was assigned to the physical security/crime prevention unit reporting to Captain Alfred Coburn. Plaintiff deLeon, and a female Sergeant ("Sgt."), Denise Gentry, were responsible for monthly testing of panic alarm systems, light surveys, police inventory, and related tasks. Plaintiff deLeon and Sgt. Gentry performed their duties in an exceptional manner and were recognized in a ceremony and presented with an award by the Medical Center Director.

8. On February 15, 2018, Plaintiff deLeon was assigned to a shift to provide security at a parking lot at the Medical Center. While performing his duties that day, he stopped an individual he recognized as an Agency employee and advised her that she could not park in an

area where employees were not allowed to park. The employee became belligerent, and said "f---- this, I am late to work" and turned her steering wheel toward Plaintiff deLeon and sped off, with Plaintiff deLeon's arm caught in the driver's side seat belt. Plaintiff deLeon was dragged twenty to forty feet by the vehicle as he screamed for the employee to stop the vehicle. Fearing for his life, Plaintiff deLeon pulled his service weapon and screamed for her to stop the vehicle one last time, and she stopped the vehicle. Plaintiff deLeon fell to the ground in excruciating pain. Donald Simons is a security guard contractor at the VA and he was present during the incident and stood a few feet from Plaintiff deLeon during the assault. Major Coburn was Plaintiff deLeon's direct supervisor at the time and submitted a witness statement. Plaintiff deLeon was unable to write after the assault so Defendant Artis wrote the official narrative on the police report. Plaintiff deLeon signed the report. Plaintiff deLeon was later seen in the emergency room at the VA.

9. An investigation was undertaken by the VA's Investigator, Elton Artis. Defendant Artis questioned the individual who assaulted Plaintiff deLeon with her vehicle. Defendant Artis was good friends with the mother and stepfather of the individual who assaulted Plaintiff deLeon and Defendant Artis permitted the individual's mother to sit in on the interview while the individual was in lock up after the assault. During the individual's interview, her mother stated to Defendant Artis, "Artis, you and I go way back." As a result of Defendant Artis' personal relationship with the mother of the accused, he decided he would not contact the Metropolitan Police Department to report the assault on Plaintiff deLeon. News of the incident quickly spread throughout the VA Medical Center, and Michael Heimall, the VA Medical Center Director and Defendant Stanton were made aware of the incident and failed to report it to the Metropolitan Police Department and failed to take any action against Defendant Artis, and no action was taken

against the female who assaulted Plaintiff deLeon. Upon information and belief, Defendant Artis later inquired whether the U.S. Attorney's Office would investigate Plaintiff deLeon for pulling his service weapon during this incident.

10. After the incident, Plaintiff deLeon began physical therapy. As a result of his injury, Plaintiff deLeon is unable to raise his left hand above his shoulder, carry any object weighing more than 5 pounds, and his shoulder pops during certain motions. It was later determined that he needed surgery to repair two rotator cuff tears.

11. After Plaintiff deLeon returned to work, he was assigned back to his previous unit, physical security/crime prevention. The Chief of Police implemented a new security system known as Lynx, which was a duress alarm system that works by pressing the F9 and F11 buttons simultaneously to summon the police to a specific location. The purpose of the system is to provide every employee with a means to contact first responders in the event of an emergency. In May 2018, Plaintiff deLeon was assigned as the Administrative Officer for Lynx. This assignment met all the limitations ordered by his doctor. Plaintiff deLeon's job was to conduct monthly testing and make workable any computers that were dormant. He was responsible for approximately 10,000 clients located throughout the Medical Center and any and all centers that were under the VA Medical Center throughout the Washington, D.C. Metropolitan area.

12. Plaintiff deLeon discovered that in many instances the reported locations of computers did not match their actual location. Plaintiff deLeon reported the issue to Chief Hebert, since it is critical that when the alarm is activated, the location shown on the monitor is the actual location reported. Chief Hebert understood the dangers of incorrect information and the urgency required to address the issue, and he authorized unlimited overtime for Plaintiff

deLeon to complete the task of physically documenting where the computers were actually located, including verifying telephones numbers and locations.

13. In May 2018, Chief Hebert and Major Coburn were reassigned to other VA facilities, and Acting Chief Troy Brown became responsible for Operations. Acting Chief Brown temporarily promoted Investigator Elton Artis as the Acting Deputy Chief of Police and assigned him responsibility for physical security and training. During this period, Roger Lindsay was the Deputy Chief of Police.

14. Shortly after Defendant Artis took over responsibility for Physical Security and Training, he began to question Plaintiff deLeon about whether Plaintiff deLeon had completed a CA 17 Duty Status Report form. Plaintiff deLeon advised Defendant Artis that he had provided all pertinent information and documents regarding his injury to the VA. Acting Deputy Chief Artis continued to demand that Plaintiff deLeon provide the CA 17 forms. Plaintiff deLeon was concerned about his position and being written up for disobeying a direct order and retained counsel to represent him. After Plaintiff deLeon's counsel wrote a letter to Acting Chief Artis requesting that he direct all concerns regarding Plaintiff deLeon's worker's compensation claim to him, Acting Chief Artis began a pattern of harassing Plaintiff deLeon.

15. In May 2018, Acting Chief Artis began meeting with a Human Resources staff person, Willie Shacks, who had access to Plaintiff deLeon's personnel records, to review Plaintiff deLeon's personnel records. Mr. Shacks used his position to attempt to gain unauthorized access to Plaintiff deLeon's medical records without Plaintiff deLeon's written consent.

16. Plaintiff deLeon informed the Assistant Medical Center Director that Mr. Shacks was attempting to access his medical records without his consent, but the Assistant Medical
<<br>

Center Director was not concerned. Plaintiff deLeon informed the Deputy Human Resources Chief that he was concerned that Mr. Shacks was attempting to access his medical records without his consent, and she responded that Mr. Shacks had the authority to gain access to his medical records without his consent. The Deputy Human Resources staff person further advised Plaintiff deLeon that upon review of his position description, he was currently unable to fulfill the requirements of his job and the Agency would have to place him elsewhere.

17. Plaintiff deLeon suspected that he was being targeted for retaliation. He is aware of another officer who was hired at the VA Medical Center in August 2017 while on worker's compensation and on restricted duty, and the Agency had not threatened that officer's employment nor threatened to remove him from police service. Plaintiff deLeon is aware of a second officer who is on restricted duty and continues to be employed at the Agency.

18. Defendant Artis' harassment of Plaintiff deLeon included confronting him in the office in an angry tone while in possession of his service weapon. The harassment was so severe, Plaintiff deLeon feared for his safety and was forced to file a civil complaint in the District of Columbia Superior Court and request a protective order against Defendant Artis. Defendant Artis was served with the civil action filed by Plaintiff deLeon and after he received notice, he began deliberate actions to remove Plaintiff deLeon from employment at the VA Medical Center.

19. Plaintiff deLeon's performance evaluation was due at the end of the fiscal year on September 30, 2018. He was not given an evaluation and was informed that the new supervisor would conduct his evaluation and Defendant Artis had given instructions that Plaintiff deLeon could not receive a rating higher than "fully successful" because he is not in uniform performing the duties in his job description. This occurred despite the fact that Plaintiff deLeon continued to successfully perform the Administrative Officer duties for which he had been commended.

20. In October 2018, Defendant Artis issued a directive to Plaintiff deLeon that he was not allowed to drive any government vehicles until further notice. He informed Deputy Chief Roger Lindsay that he was taking away all of Plaintiff deLeon's day-to-day responsibilities, which Plaintiff deLeon had been performing for eighteen months.

21. Plaintiff deLeon was out of work from mid October 2018 until mid November 2018. He took eight "use or lose" days and when it was time for him to return to work, he became ill and missed additional time. While he was ill Plaintiff deLeon called in each day as required by VA policy. On Tuesday, November 13, 2018, Plaintiff deLeon contacted dispatch and spoke with a security assistant and advised that he had taken prescribed medication which made him sleepy and that he was unable to drive. The security assistant stated that he was placing the call in the journal where this information is recorded and they ended the call. Deputy Chief Lindsay later reported to Plaintiff deLeon that Defendant Artis wrote Plaintiff deLeon up for being Absent Without Leave ("AWOL"), and falsely claiming that Plaintiff deLeon did not inform anyone that he was going to be absent from work. The AWOL is a form of discipline and is placed in an employee's personnel file. On October 31, 2018, the VA Medical Center posted a position of Acting Chief of Police Service and later selected Defendant Artis for this position. At the time, the Deputy Chief of Police position was occupied by Roger Lindsay.

22. In November 2018, Defendant Artis removed all of Plaintiff deLeon's responsibilities, which were given to him prior to his injury and after his injury, with no explanation. Prior to Plaintiff deLeon's complaint against Defendant Artis, Defendant Artis told him he was doing a phenomenal job. Plaintiff deLeon lost a considerable amount of income as a result of the treatment he has received. His prior responsibilities required him to travel

throughout the Metropolitan Washington area, and utilize a considerable amount of overtime. The previous responsibilities fell within the medical limitations of his physician.

23. In early December 2018, Plaintiff deLeon was informed by Captain Andrew W. Miller that Defendant Artis assigned him as Plaintiff's immediate supervisor. Capt. Miller reports to Defendant Artis. Plaintiff deLeon took annual leave the last two weeks of December 2018 and was scheduled to return to work the first week of January 2019. During his absence, he learned that Defendant Artis was planning to remove him from his position when he returned to work and force him to accept a light duty position, even though he was and still is capable of performing the duties of the Administrative Officer position.

24. On January 4, 2019, Plaintiff deLeon met with Carroll Shannon, the VA Medical Center Chief of Human Resources, and Theresa Anding, Manager of Performance Evaluation and Katrina Mitchell, an Employee Labor Relations Specialist. Plaintiff deLeon asserted that the evaluation process was flawed because Defendant Artis stated that Plaintiff deLeon could not receive an evaluation higher than meets expectations because he was not working in his position of record. Both Ms. Anding and Ms. Mitchell agreed that Plaintiff deLeon should have received an Outstanding rating given his performance and the information he provided for the evaluation. Ms. Shannon offered to assist Plaintiff deLeon with a reassignment and stated that there were other remedies available but she wanted to have a conversation with Associate Director Stanton about the evaluation process.

25. Plaintiff deLeon was scheduled for "use or lose" leave through January 4, 2019. Plaintiff deLeon believed he had an additional day of leave, January 7, 2019, because December 24, 2019 was a federal holiday per Presidential Executive Order, and did not report for work on January 7, 2019. Plaintiff deLeon requested the Agency policy which supported Capt. Miller's

statement that leave ended on the day in the VA Medical Center's time records system. Capt. Miller became upset and accused Plaintiff deLeon of waiting until the end of the year to use his leave, and advised him that he would be charged AWOL on January 7, 2019.

26. On January 17, 2019, Capt. Miller issued Plaintiff deLeon a Cease and Desist Order. As the Administrative Officer, Plaintiff deLeon is responsible for entering the offices of employees and checking their panic alarms on a monthly basis. As a courtesy Plaintiff deLeon began the practice of leaving notes for employees when he had been in their office. The Cease and Desist Order was issued because Plaintiff deLeon left handwritten notes on a Post It pad in the offices he entered for an employee with the comments, "Chris was here, Good Morning Neighbor," and "Happy Friday, Chris was here." The Cease and Desist Order provides that:

> This Cease and Desist order is to information you that your persistent actions including but not limited to entering the office of Dr. Stephanie Guedj and leaving sticky notes, writing notes on business cards, or conversations with employee have become unbearable for said employee.
> You are ordered to stop such the following activities immediately:
> 1. You will have no telephone or face to face contact with Dr. Stephanie Guedj either at your place of employment located at the Washington DC VAMC or while Dr. Guedj is off VA property.
> 2. You will no longer enter the office belonging to Dr. Guedj or any office Dr. Guedj is currently residing in.
> 3. You will no longer leave notes addressing Dr. Guedj in any form or manner.

27. The Administrative Officer for Mental Health Service, Yvonne A. Blake, was alerted to the Cease and Desist Order issued to Plaintiff deLeon and prepared a memorandum in response. In her response, she noted that Plaintiff deLeon entered her office as well and left her a note and she appreciated the monthly notes as they alerted her to the fact that someone entered her office in her absence, and that the notes were not offensive in any way and she welcomed the notes and she was comforted that her panic alarm was checked. She further commented that the

employee had an opportunity to come to the Administrative Officer if there was any issue and the staffer never informed Plaintiff deLeon that she found the notes to be offensive. The Cease and Desist Order was issued at the direction of Defendant Artis.

28. On January 22, 2019, Plaintiff deLeon went to the Human Resources Office of the VA Medical Center in Washington, D.C. to speak to a human resources specialist. While meeting with the specialist, Ms. Taneshia Horton, the Deputy Chief of Human Resources interrupted their conversation to discuss a matter with the specialist. Plaintiff deLeon greeted the Deputy Chief of Human Resources and took two steps back to allow the parties privacy. After the individuals completed their conversation, Plaintiff deLeon continued his conversation with the specialist. As Plaintiff deLeon exited the Human Resources Office, he observed Defendant Artis and Captain Miller and Captain Robinson at the reception area. Captain Miller approached Plaintiff deLeon and stated, "You need my permission prior to coming to Human Resources." There is no requirement that VA employees obtain prior authorization to meet with Human Resources staff to discuss personnel matters. Defendant Artis then commented, "Sgt deLeon, you should sign-in every time you come to HR." Plaintiff deLeon walked to the Human Resources counter and signed his name and left the Human Resources Office.

29. In January 2019, Robyn Hardy began employment at the VA Medical Center as the new Chief of Police. On February 1, 2019, Chief Hardy issued Plaintiff deLeon notice that his work shift would change from 2:00 a.m. through 10:00 a.m. to 8:00 a.m. through 4:30 p.m., Monday through Friday. Plaintiff deLeon was paid four hours of night differential each day while on the 2 a.m. through 10 a.m. shift, over the ten working days each pay period. After he was placed on the day shift, he was no longer eligible for the night differential. Plaintiff deLeon was informed that his shift was being changed because the medical documentation he submitted

to the VA showed that his limitation letters were signed by a physician assistant and not a medical doctor, and Plaintiff deLeon had not provided monthly updates on his medical limitations. Prior to the Agency changing his shift, the Agency did not advise him that there was an issue with his medical documentation.

30. After he was removed from the night shift, Plaintiff deLeon was assigned to an entry desk as a security officer at the VA Medical Center where he was responsible for checking the identification of visitors to the VA Medical Center.

31. On February 28, 2019, an incident occurred when a female visitor, Ilene Karen Dadey entered the VA Medical Center, and Plaintiff deLeon asked to see her identification. He identified himself, and she asked why he was not in uniform. Plaintiff deLeon provided a number for her to contact to confirm his identity. Approximately four hours later, the visitor returned to the desk where Plaintiff deLeon was stationed and approached him and took out her cell phone and attempted to take a photograph or videotape her. The VA Medical Center had a policy, Medical Center Policy Memorandum No. 00-22 which prohibits the taking of photographs in the VA Medical Center. Plaintiff deLeon feared for his safety and grasped the visitor's arm and called for assistance for a disruptive visitor. The incident was captured on video camera. Ms. Dadey initially made a false statement in her report that she was not taking a photograph of Plaintiff deLeon. Defendant Artis contacted the Metropolitan Police Department to file assault charges against Plaintiff deLeon and requested to be informed when District of Columbia Metropolitan Police Department ("MPD") officers arrived at the VA Medical Center. Defendant Artis had a personal relationship with the officers who arrived to investigate the matter and was observed giving a "thumbs up" signal to the MPD officers who investigated the matter as they concluded their meeting with him. He later met with Ms. Dadey and coached her to file a

complaint with MPD and for a protective order in a District Court in Arlington, Virginia. At MPD, Ms. Dadey claimed that she was assaulted the incident. After she filed a request for a restraining order against Plaintiff deLeon in the Virginia court, she appeared in court and gave a grand performance on how she was emotionally traumatized as a result of the incident and testified that personnel actions had been taken against Plaintiff deLeon by the VA Medical Center. The action in the Virginia District Court was dismissed, but Plaintiff deLeon was served with the court action and forced to retain counsel to represent him. Shortly after the Virginia action was dismissed, Ms. Dadey returned to the VA Medical Center to meet with Defendant Artis and was overheard announcing to Defendant Artis, "It didn't work" before meeting with him in his office. Defendant Artis, with the knowledge and consent of Defendant Hardy and Defendant Stanton, encouraged Ms. Dadey to continue to pursue simple assault charges with MPD against Plaintiff deLeon, and Defendant Artis pressured MPD to file assault charges against Plaintiff deLeon by claiming that Plaintiff deLeon's police powers were suspended, even though his police powers were suspended because he was injured in a workplace assault in February 2018, and Defendant Artis and Defendant Hardy assigned him to a position as a security officer out of uniform. Defendant Artis had previously failed to take any action after Plaintiff deLeon was dragged by the vehicle of a VA Medical Center employee. In addition, in 2018, there was an incident at the VA Medical Center where an officer got into an altercation with a visitor and physically beat the visitor, and no action was taken.

32. On March 4, 2019, the VA Medical Center Director Heimall issued Plaintiff deLeon a Memorandum with the Subject line: Authorized Absence Pending Investigation. In the Memorandum, Plaintiff deLeon was advised that "[t]he purpose of this memo is to inform you that you are being placed in an Authorized Absence (AA) status until further notice, pending

13

investigation into concerns of alleged inappropriate conduct." Plaintiff deLeon was instructed to turn in his Personal Identification Verification (PIV) badge and advised that his presence at the VA Medical Center was restricted to seeking and attending personal healthcare and veterans' benefits appointments only.

33. On March 15, 2019, Defendant Hardy left a voicemail message for Plaintiff deLeon ordering him to return to work on Monday, March 15, 2019 and report to Defendant Stanton. Plaintiff deLeon was suspicious of the message and sent Defendant Hardy an email, requesting that she confirm her order. Defendant Hardy thereafter issued Plaintiff deLeon a Memorandum on March 15, 2019 prohibiting him from having any communication with any VA Medical Center employee.

34. As a result of the actions of Defendants Hardy, Artis and Stanton, the MPD filed a criminal Complaint against Plaintiff deLeon, and on March 22, 2019, a warrant was issued for his arrest. On March 28, 2019, Plaintiff deLeon was issued a notice of proposed removal from the VA Medical Center based on the incident with the visitor on February 28, 2019 and was terminated from employment at the VA Medical Center on April 8, 2019. Plaintiff deLeon has appealed his termination to the MSPB. On April 18, 2019, Plaintiff deLeon and his counsel appeared at an MPD precinct at 6 a.m. and Plaintiff deLeon was placed in custody and detained until 4 p.m., when his case was called and he was seen by a judge. Plaintiff was held in custody because the U.S. Attorney's Office could not decide if it would paper the case. On April 18, 2018, Ms. Dadey appeared at the VA Medical Center and reported to officers that she had seen Plaintiff deLeon at the facility that day and he had been following her and she feared for her safety. Following Plaintiff's termination, Defendants' Hardy and Artis threatened officers that they should have no contact with Plaintiff deLeon.

## Count I

### Violation of the First Amendment of the U.S. Constitution (*Bivens*)

35. Plaintiff deLeon incorporates by reference all paragraphs above as if fully stated herein.

36. The First Amendment guarantees the right to free speech and to petition the government for redress of grievances. Government officials may not interfere with these rights directly, punish an individual for exercise of those rights, or engage in retaliatory conduct aimed at chilling future exercise of those rights.

37. Defendants sought to punish and retaliate against Plaintiff deLeon for the exercise of his First Amendment rights. After Plaintiff filed a civil claim for a protective order in court against Defendant Artis when he persisted in confronting him at work in an angry tone while in possession of his service weapon, Defendants Artis and Stanton, and later Defendant Hardy retaliated against him by: 1) revoking his use of an Agency vehicle and removing all of his duties as an Administrative Officer; 2) failing to provide an evaluation in a timely manner and then issuing a false evaluation; 3) initiating a "Cease and Desist order" against Plaintiff deLeon as a result of Plaintiff deLeon leaving notes in offices that he entered after hours so that the occupant of the office would know someone had been in the office; 4) changing his work shift resulting in the loss of night differential pay; 5) assigning him to a position as a security officer out of uniform at an entry area of the VA Medical Center checking the identification of visitors which resulted in an incident with a female visitor who confronted him; 6) pursuing criminal charges against Plaintiff deLeon as a result of the incident on February 28, 2019 and coaching the female visitor to file a criminal complaint and seek a protective order against Plaintiff deLeon without cause and disclosing Plaintiff deLeon's confidential personnel information about discipline being

taken against Plaintiff deLeon to the female visitor; 7) placing Plaintiff deLeon on administrative leave and ordering him to not have any contact with any VA Medical Center employee; and 8) proposing the removal of Plaintiff deLeon from employment for a simple assault on the female visitor when the individual defendants removed Plaintiff's police powers, and took no action when Plaintiff deLeon was assaulted in February 2018 and another officer was involved in an altercation at the VA Medical Center in 2018 and beat a visitor; and 9) terminating Plaintiff's employment from the VA Medical Center. The VA Medical Center violated Plaintiff deLeon's First Amendment rights by retaliating against him to cause his termination from employment as a result of his complaint against Defendant Artis.

## Count II

### Violation of the Fifth Amendment of the U.S. Constitution

38. Plaintiff deLeon incorporates by reference all paragraphs above as if fully stated herein.

39. The Fifth Amendment to the U.S. Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The Fifth Amendment to the U.S. Constitution encompasses "the right of the individual to contract [and]…to engage in any of the common occupations of life." *Board of Regents of States Colleges v. Roth*, 408 U.S. 564, 572 (1972) (citations omitted). "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to her, notice and an opportunity to be heard are essential." *Id.* at 573. The Fifth Amendment protects against reputational harm/defamation in termination and stigma from an adverse employment action which harms the employment prospects of an individual. Courts have recognized that the due process clause protects against the loss of future employment. *Paul v. Davis*, 424 U.S. 693, 704 (1976).

40. Defendant violated Plaintiff deLeon's due process rights by: 1) initiating a "Cease and Desist order" against Plaintiff deLeon as a result of Plaintiff deLeon leaving notes in offices that he entered after hours so that the occupant of the office would know someone had been in the office; 2) assigning him to a position as a security officer out of uniform at an entry area of the VA Medical Center checking the identification of visitors which resulted in an incident with a female visitor who confronted him; 3) pursuing criminal charges against Plaintiff deLeon as a result of the incident on February 28, 2019 and coaching the female visitor to file a criminal complaint and seek a protective order against Plaintiff deLeon without cause, and disclosing to the female visitor Plaintiff deLeon's confidential personnel records, including discipline pending against Plaintiff deLeon; 4) placing Plaintiff deLeon on administrative leave and ordering him to not have any contact with any VA Medical Center employee; and 5) proposing the removal of Plaintiff deLeon from employment for a simple assault on the female visitor when the individual defendants removed Plaintiff's police powers, and took no action when Plaintiff deLeon was assaulted in February 2018 and another officer was involved in an altercation at the VA Medical Center in 2018 and beat a visitor; and 6) terminating Plaintiff deLeon's employment.

41. The VA Medical Center has knowingly and willfully violated Plaintiff deLeon's Fifth Amendment rights to liberty and property without due process, and caused reputational harm to him in the process, and has prevented him from obtaining employment in his chosen profession.

## Count III

### Violation of the Privacy Act
### 5 U.S.C. § 552a

42. Plaintiff deLeon incorporates by reference all paragraphs as if fully stated herein.

43. Defendant VA maintains a system of records as defined by the Privacy Act, 5 U.S.C. Section 552a(a)(5). This system of records includes records as defined by 5 U.S.C. Section 552a(a)(4). Section 552a(b) of the Privacy Act provides, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record obtains." No exception to this disclosure prohibition applies here. The Agency willfully and intentionally disclosed records pertaining to Plaintiff deLeon from within their "systems of records" on many occasions, without Plaintiff deLeon's consent or approval in violation this provision.

44. Defendant Artis met with Willie Shacks in May 2018 and reviewed Plaintiff's personnel records without Plaintiff's consent; and Defendant Artis met with the female visitor who was involved in an incident with Plaintiff deLeon on February 28, 2019 and disclosed to her that the VA Medical Center had taken disciplinary action against Plaintiff deLeon, and with knowledge of this information, the female visitor testified in the Arlington District Court that the VA Medical Center had taken disciplinary action against Plaintiff deLeon.

### Count IV

**Conspiracy to Violate the Fourth Amendment of the U.S. Constitution** *(Bivens)*

45. Plaintiff deLeon incorporates by reference all paragraphs as if fully stated herein.

46. The Fourth Amendment of the U.S. Constitution guarantees the Plaintiff's right to be free from unlawful searches and seizures.

47. Defendant Artis coached Ilene Karen Dadey to file criminal charges against Plaintiff deLeon and separately contacted MPD to pressure MPD to pursue assault charges against Plaintiff deLeon to cause his arrest and justify his termination, with the knowledge and

consent of Defendants Hardy and Stanton, and did not have any other legal justification for pursuing criminal charges against Plaintiff deLeon.

48. Plaintiffs seek money damages for personal injury, including disciplinary actions taken against Plaintiff as a result of the unlawful arrest and detainment and the loss of benefits and/or wages.

49. Plaintiff's harm was caused by the wrongful acts of Defendants Artis, Hardy and Stanton Brown while acting within the scope of their employment as an agent of the Department of Veterans Affairs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays as follows:

A. Issue a declaratory judgment that the individual Defendants' conduct as described above toward Plaintiff violated his rights under the First and Fifth Amendments to the U.S. Constitution, and the Privacy Act;

B. Declare Defendants' conduct to be unlawful and issue a permanent injunction prohibiting Defendants Hardy, Artis and Stanton from reporting that Plaintiff assaulted Ms. Dadey;

C. Award Plaintiff compensatory and punitive damages, for monetary and non-monetary injuries including without limitation, lost earnings, diminished future earning capacity, medical expenses, pain and suffering, and emotional distress, in an amount of ten million dollars ($10,000,000);

D. Grant Plaintiff an award of attorney's fees and other litigation costs reasonably incurred in this action; and

E. Grant Plaintiff such other and further relief which the Court deems proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all counts so triable.

                      Respectfully submitted,

                       */s/ David A. Branch*
                      David A. Branch #438764
                      Law Office of David A. Branch &
                      Associates, PLLC
                      1828 L Street NW, Suite 820
                      Washington, DC 20036
                      (202) 785-2805 phone
                      (202) 785-0289 fax
                      davidbranch@dbranchlaw.com