UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS deLEON,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT WILKIE, Secretary, Department of Veterans Affairs, *et al.*,<br><br>Defendants. | Civil Action No. 19-1250 (JEB) |

MEMORANDUM OPINION

Plaintiff Chris deLeon is a former employee of the Department of Veterans Affairs Medical Center here in Washington. His stint there was short but tumultuous. In just two years, he was involved in several altercations, including one with his superior and another with a Medical Center visitor, the latter of which resulted in criminal assault charges. After conducting an investigation into this incident, the agency terminated deLeon. Plaintiff responded with this suit against the VA and several officials, asserting various constitutional and statutory causes of action arising from his termination and other purported mistreatment. Defendants now move to dismiss, contending that this Court lacks subject-matter jurisdiction over certain counts and that deLeon has failed to state any claims upon which relief can be granted. Agreeing on both scores, the Court will grant the Motion and dismiss the case.

I. Background

As it must at this stage, the Court draws the facts from the Complaint. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). In May 2017, deLeon began working as a police sergeant for the Medical Center. See Compl., ¶ 6. Some nine months later,

1

in February 2018, he became embroiled in a parking-lot altercation, sustaining several injuries. Id., ¶¶ 8–9; see id., ¶ 10 (limited range of motion in his shoulder and inability to carry more than five pounds). DeLeon's doctor, therefore, ordered him to limit his physical activity. Id., ¶ 11. So when Plaintiff returned to work, the agency assigned him a new role — one that met these limitations — within the Physical Security and Training section. Id.

Shortly after, in May 2018, Defendant Elton Artis became the Medical Center's Acting Deputy Chief of Police. Id., ¶ 13. Among other duties, he supervised deLeon's assigned section. Id., ¶ 14. That month, Artis asked Plaintiff to submit an agency form that sets out an employee's specific work limitations. Id. Believing that he had already submitted the necessary paperwork, deLeon refused. Id. Not so easily deterred, Artis reached out to Human Resources for Plaintiff's medical records. Id., ¶ 15. When deLeon learned that HR staff had been attempting to view his records without his consent, he protested to the Deputy Chief of that department. Id., ¶ 16. His efforts, however, met with little success. The deputy remarked that staff had the authority to review his records; she also explained that because he was unable to fulfill his assignment's duties, he was going to be reassigned to a different role. Id.

Plaintiff alleges that shortly thereafter he was subjected to harassment. At one point, for instance, Artis confronted deLeon "in an angry tone while in possession of his service weapon." Id., ¶ 18. Fearing for his safety, Plaintiff filed a complaint in D.C. Superior Court, where he sought a protective order against Artis. Id. The agency then allegedly retaliated against him through a series of workplace incidents. Id., ¶¶ 19–30. More on that later.

According to the Complaint, his ill treatment did not end there. At the beginning of 2019, the agency reassigned deLeon to an entry desk at the Medical Center, where he was responsible for screening and processing visitors. Id., ¶¶ 29–30. While on duty there, on

February 28, he became entangled in yet another imbroglio, this time with visitor Ilene Dadey. Id., ¶ 31. DeLeon alleges that she, in contravention of agency policy, attempted to photograph or videotape him. Id. Concerned for his safety, Plaintiff grabbed her arm. Id. When Artis learned of this, he contacted the D.C. Metropolitan Police Department, which investigated the matter and arrested deLeon for assault. Id. The agency, too, reviewed the incident and placed him on administrative leave. Id., ¶¶ 32–34. It eventually concluded that his conduct was inappropriate and terminated him on April 8. Id., ¶ 34. Later that month, Plaintiff appealed his termination to the Merit Systems Protection Board — an agency whose relevance will become plain shortly. Id.

Plaintiff, however, did not wait for an MSBP decision. On April 29, shortly after filing his administrative appeal, he brought suit against Defendants Artis, Robyn Hardy (the Chief of Police of the Medical Center), Stanley Staton (an Assistant Medical Director), and the agency. Id., ¶ 5. He brings four claims — three constitutional and one statutory. Id., ¶¶ 35–49. The first asserts that Defendants retaliated against him in violation of the First Amendment after he sought a protective order against Artis. Id., ¶¶ 35–37. The second alleges that a number of agency actions damaged his reputation and hindered his employment prospects in violation of the Fifth Amendment. Id., ¶¶ 38–41. The third makes out Privacy Act violations based on the nonconsensual disclosure of his personal information. Id., ¶¶ 42–44. And the fourth alleges that Defendants, in violation of the Fourth Amendment, conspired with MPD to arrest deLeon. Id., ¶¶ 45–49.

As recompense for the violations, he seeks, *inter alia*, compensatory and punitive damages to the tune of 10 million dollars. Id. at 19. Defendants, for their part, have moved to dismiss deLeon's entire suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference "unsupported by thge facts set out in the complaint." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986); then quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Under Rule 12(b)(1), Plaintiff bears the burden of proving that the court has subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As such, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

**III. Analysis**

As mentioned above, deLeon accuses Defendants of violating the First Amendment (Count I), Fifth Amendment (Count II), and Privacy Act (Count III), as well as conspiring to violate the Fourth Amendment (Count IV). See Compl., ¶¶ 35–49. The First and Fourth Amendment claims are asserted against individual Defendants pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In contrast, the Fifth Amendment count is brought against the agency itself in the name of the Secretary. Although the Defendants vary depending on the count in question, the Court need not parse this too finely at this point given the result. For ease of analysis, it will begin by addressing Counts I and II together, as they fall for the same reasons. It will then separately analyze the remaining ones.

   A. Counts I & II

Plaintiff first claims that he suffered certain work-related harms — *e.g.*, delayed and arbitrarily deflated performance reviews, reduced workload and overtime potential, undesirable assignments, and termination — that were inflicted in retaliation for engaging in speech protected by the First Amendment. See Compl., ¶¶ 35–37 (Count I). That speech, he alleges, consisted of filing for a protective order in Superior Court against Artis following a heated confrontation. Id., ¶ 37. DeLeon further alleges that Defendants, through these adverse employment actions, violated his due-process rights, harmed his reputation, and "prevented him from obtaining employment in his chosen profession." Id., ¶¶ 38–41 (Count II). These wrongs, he argues, violated his Fifth Amendment rights. Id.

In moving to dismiss these two counts, Defendants contend both that subject-matter jurisdiction is lacking and that the claims suffer from substantive defects. See Defs.' MTD at 6–11; Defs.' Reply at 3–7. The Court considers these arguments in turn.

1. *Jurisdiction*

As to their first submission, Defendants maintain that deLeon has failed to exhaust his remedies under the Civil Service Reform Act (codified as amended in scattered sections of 5 U.S.C.). See Defs.' MTD at 6–7. Before delving into this argument, the Court offers a few general words on the CSRA and then explains its relevance to the constitutional claims at issue here.

Congress enacted the Act as part of a "comprehensive[] overhaul[]" of the civil-service system. See Lindahl v. OPM, 470 U.S. 768, 773 (1985). In doing so, it "replace[d] the haphazard arrangements for administrative and judicial review of personnel action." United States v. Fausto, 484 U.S. 439, 444 (1988). To reform the "outdated patchwork of statutes and rules built up over almost a century," Congress created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration." Id. at 444–45. The Act "protects covered federal employees against a broad range of personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated." Grosdidier v. Chairman, 560 F.3d 495, 497 (D.C. Cir. 2009). By way of example, employees must file any appeal of most major employment actions — *e.g.*, termination — directly to the MSPB. See 5 U.S.C. §§ 7512, 7513(d). If an employee is dissatisfied with the Board's ruling, only then may he seek judicial review. Id. § 7703(a)(1), (b)(1). Put otherwise, he must first exhaust his administrative remedies. See Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit."); see also Gardner v. United States, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) ("The district court lacked subject matter jurisdiction of [the] claims . . .

because [the plaintiff] failed to allege that he had exhausted his administrative remedies, as required under the [CSRA].").

Plaintiff, moreover, cannot escape this requirement by characterizing his disputes as constitutional. See Steadman v. Governor, 918 F.2d 963, 967 (D.C. Cir. 1990) ("When the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion is mandated.") (quoting Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C. Cir. 1984)). That is because the public interest in upholding the statutory scheme created by Congress for addressing personnel-related matters is so strong that federal employees "may not circumvent that structure even if their claim is based . . . on the Constitution." Id. Indeed, as the Supreme Court has observed, the MSPB "routinely adjudicates some constitutional claims, such as claims that an agency took an adverse employment action in violation of an employee's [constitutional] rights, and that these claims must be brought within the CSRA scheme." Elgin v. U.S. Dep't of Treasury, 567 U.S. 1, 12 (2012).

DeLeon acknowledges that he has pursued the processes and protections afforded by the CSRA. See, e.g., Compl., ¶ 34; Pl. Opp. at 18. He does not, moreover, dispute that his claims are subject to exhaustion. See Pl. Opp. at 18–20. Nor could he, given that, as noted above, courts have repeatedly affirmed the dismissal of claims arising under the Constitution in the absence of exhaustion. See, e.g., Weaver, 87 F.3d at 1433–35 (affirming dismissal of First Amendment claim for failure to exhaust CSRA procedures); see also Steadman, 918 F.2d at 967–68 (reversing court's finding of jurisdiction and rejecting due-process claim where employee had failed to exhaust remedies).

With that understanding in place, the Court can make quick work of these two counts. Nowhere in the Complaint does Plaintiff allege that he exhausted his CSRA remedies — and for good reason. The MSPB issued its final decision nearly four months after deLeon filed this suit. Compare Pl. Opp. at 18 (MSPB's final decision on August 23), with Compl. (filed on April 29). It is clear, then, that he had not satisfied the exhaustion requirement at the time he sued.

Perhaps recognizing the writing on the wall, deLeon argues that he should be permitted to amend his pleadings. See Pl. Opp. at 19–20. In fact, he likely means to supplement the Complaint with actions that occurred after his initial filing — *i.e.*, the MSPB final decision. For support, he pays lip service to Federal Rule of Civil Procedure 15 and cites several cases where courts have granted motions to amend. Id. Under Rule 15(a), "[l]eave to amend . . . shall be freely given when justice so requires." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The D.C. Circuit, however, has held that a request in an opposition to a motion to dismiss does not constitute a Rule 15(a) motion. Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993) (emphasis added); accord Saunders v. Davis, 2016 WL 4921418, at *16 (D.D.C. Sept. 15, 2016). As deLeon has provided nothing more than a "bare request" in his Opposition, without even offering the proposed amendment that the Local Rules require, the Court will deny his request.

In any event, with certain exceptions not relevant here, adverse MSPB rulings may be appealed to the Federal Circuit, not a district court. See 5 U.S.C. § 7703(b)(1)(A)); 28 U.S.C. § 1295(a)(9). The Court, accordingly, will dismiss Counts I and II for lack of subject-matter jurisdiction.

2. *Merits*

Although the Court finds that it lacks jurisdiction, it will also explain why Plaintiff comes up empty on the merits.

a. First Amendment

As the reader knows, deLeon maintains that Defendants retaliated against him through a series of workplace incidents after he filed for a protective order against Artis. See Compl., ¶ 37.

To determine whether a First Amendment violation exists in such a situation, our Circuit uses a four-part inquiry:

> First, the public employee must have spoken as a citizen on a matter of public concern. Second, the court must consider whether the governmental interest in promoting the efficiency of the public service it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern. Third, the employee must show that [his] speech was a substantial or motivating factor in prompting the retaliatory or punitive act. Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

Bowie v. Maddox, 642 F.3d 1122, 1133 (D.C. Cir. 2011) (quoting Wilburn v. Robinson, 480 F.3d 1140, 1149 (D.C. Cir. 2007)). More specifically, the first factor — which presents a question of law — "really imposes two requirements — that the employee speak 'as a citizen' and that the speech be 'on a matter of public concern.'" Hawkins v. Dist. of Columbia, 923 F. Supp. 2d 128, 137 (D.D.C. 2013); see Thompson v. Dist. of Columbia, 428 F.3d 283, 286 (D.C. Cir. 2005).

The Court begins and ends with the latter requirement. See LeFande v. Dist. of Columbia, 613 F.3d 1155, 1159 (D.C. Cir. 2010) ("If the speech is not a matter of public concern, 'the employee has no First Amendment cause of action based on his . . . employer's reaction.'") (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). A matter is of public

9

concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Conversely, speech about "individual personnel disputes and grievances" is not. See LeFande, 613 F.3d at 1161.

Plaintiff argues that seeking a protective order "against an angry individual [— *i.e.*, Artis —] with a firearm" tackles a matter of public concern, as it involves access to "the United States Justice System" and the "maintain[ance] [of] a safe environment." Pl. Opp. at 20–21. Lofty as this description may appear, caselaw cuts against his position. In Barnes v. Small, 840 F.2d 972 (D.C. Cir. 1988), for example, the court found that accusations that personnel had been engaged in various forms of misbehavior — including a criminal "assault" — related to employee grievances rather than matters of public concern. Id. at 975, 982–83; see also id. at 982 (explaining that "subjects of pressing import only to other employees in the speaker's office" do not fall under rubric of matters of public concern). As in Barnes, any purported misbehavior that occurred at the Medical Center "is of pressing import" only to deLeon — or, at most, to other employees in the office — not the public at large. Armed with this Circuit's precedent, the Court could easily dispose of the First Amendment claim on the merits.

      b. Fifth Amendment

The thrust of Plaintiff's next claim centers on a number of agency actions he disagreed with during his time at the VA. In brief, deLeon complains that the government violated his due-process rights by (1) issuing a "Cease and Desist Order," prohibiting him from entering employee offices and leaving notes, (2) reassigning him to an entry-desk role, (3) pursuing criminal charges against him, (4) placing him on administrative leave, (5) proposing removal, and (6) eventually terminating him. See Compl., ¶ 40. He alleges that the agency thereby damaged his reputation and hindered his employment prospects. Id., ¶ 41.

"To state a claim for the denial of procedural due process, a plaintiff must allege that (1) the government deprived [him] of a 'liberty or property interest' to which [he] had a 'legitimate claim of entitlement,' and (2) that 'the procedures attendant upon the deprivation were constitutionally insufficient.'" New Vision Photography Program, Inc. v. Dist. of Columbia, 54 F. Supp. 3d 12, 28 (D.D.C. 2014) (quoting Roberts v. United States, 741 F.3d 152, 161 (D.C. Cir. 2014); then quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).

In general terms, one has a constitutionally protected interest in one's good name or in being able to pursue one's chosen profession. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972) ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," that person's liberty interest in on the line, meaning that "notice and an opportunity to be heard are essential.") (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

In this Circuit, a plaintiff may avail himself of two different legal theories to establish such a reputation-based due-process violation. See Hutchinson v. CIA, 393 F.3d 226, 231 (D.C. Cir. 2005). The first, commonly called a "reputation plus" claim, requires "the conjunction of official defamation and [an] adverse employment action." O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Off the bat, things look poor for deLeon. This theory "requires some form of defamatory or stigmatizing speech by the government." Jefferson v. Harris, 170 F. Supp. 3d 194, 205 (D.D.C. 2016); see Doe v. DOJ, 753 F.2d 1092, 1111 (D.C. Cir. 1985). Plaintiff, however, nowhere alleges any defamatory statement, much less one connected with an adverse action. See O'Donnell, 148 F.3d at 1140 ("[T]here is no sign that the District made any defamatory statements about [the plaintiff] at the time of his demotion."); Compl., ¶¶ 38–41.

11

His second option, then, is to pursue what is known as a "stigma plus" theory. This theory — unlike the first one, which requires some form of official speech by the government — depends only on governmental imposition of "a continuing stigma or other disability arising from official action" that "foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities." O'Donnell, 148 F.3d 1140 (quoting Roth, 408 U.S. at 573). Further, "a government action that potentially constrains future employment opportunities must involve a tangible change in status." Kartseva v. U.S. Dep't of State, 37 F.3d 1524, 1527 (D.C. Cir. 1994).

Such a change may be shown in one of two ways. The first is if the government's actions "formally or automatically exclude[d]" Plaintiff from future government employment opportunities — *e.g.*, by making "a binding determination to disqualify" him from further employment. Id. at 1528–29. DeLeon's Complaint contains no such claim, so he must rely on the second path. That is, he must allege that even if the government did not make a formal disqualification, its actions nevertheless had the "broad effect of largely precluding [him] from pursuing [his] chosen career," id. at 1528, or, put another way, that "his ability to pursue his chosen profession has been 'seriously affected, if not destroyed.'" O'Donnell, 148 F.3d at 1141–42 (quoting Kartseva, 37 F.3d at 1529).

Here, too, Plaintiff's Complaint falls short. He offers only the bare assertion that the agency's actions have "prevented him from obtaining employment in his chosen profession." Compl., ¶ 41. Missing from his Complaint are factual allegations that could support a finding that he was broadly precluded from continuing his career. See Trudeau, 456 F.3d at 193. Indeed, this Court has dismissed pleadings that contained more information than what Plaintiff presents here. See, e.g., Jefferson, 170 F. Supp. 3d at 205–06 (noting that "episodic anecdotes of

having had one job offer revoked, having final negotiations terminated in another, and losing a handful of public-speaking opportunities" fail to meet standard). DeLeon's reputation-based claim, then, falters under this theory as well.

In addition, Defendants point out that deLeon has had, or will have, sufficient process related to his placement on administrative leave, proposed removal, and ultimate termination. See Defs.' MTD at 10–11; Defs.' Reply at 8. The Court agrees. Notably, Plaintiff's interests in employment are governed under the CSRA. See Fausto, 484 U.S. at 446–47. As set out above, the Act creates procedural protections for federal employees from major adverse personnel actions, see 5 U.S.C. § 7513, including suspension, reduction in grade, furlough, and removal. Id. § 7512. He has already appealed these employment actions to the MSPB — a forum that has provided him with an opportunity to be heard. See Compl., ¶ 34. To the extent he is unhappy with the administrative ruling, moreover, he may seek judicial review (and thus obtain even more process). See 5 U.S.C. § 7703(b)(1)(A).

B. Count III

Next up are Plaintiff's two Privacy Act claims, and some background may prove useful. Congress enacted the Act to "provide certain safeguards for an individual against an invasion of privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (codified as amended at 5 U.S.C. § 552a). To that end, it imposes several requirements on federal agencies concerning, among other things, the dissemination of an individual's personal information. See 5 U.S.C. § 552a(a)(4)–(5). Section § 552a(b), for example, broadly "prohibits government agencies from disclosing confidential files without the consent of the individual." Dick v. Holder, 67 F. Supp. 3d 167, 177 (D.D.C. 2014) (citing Bigelow v. U.S. Dep't of Def., 217 F.3d 875, 876 (D.C. Cir. 2000)). This

broad proscription, however, is subject to 12 exceptions — one of which will become relevant shortly. See 5 U.S.C. § 552a(b)(1)–(12).

Separately, the Act also allows for civil remedies. Id. § 552a(g). To recover monetary compensation, "a plaintiff must establish: (1) a violation of a Privacy Act provision, (2) that the [agency's] decision . . . was intentional or willful, (3) that the [violation] caused adverse effects, and (4) that the plaintiff[] suffered actual damages." Thompson v. U.S. Dep't of State, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (alterations and omissions in original) (quoting Albright v. United States, 732 F.2d 181, 184 (D.C. Cir. 1984)) (internal quotation marks omitted).

Plaintiff alleges that the VA violated § 552a(b) on two occasions: first, when Artis reviewed his personnel records with an HR staff member; and second, when Artis disclosed to Dadey the agency's pending disciplinary action against deLeon. See Compl., ¶¶ 43–44. Defendants rejoin that these claims are infirm on three grounds: (1) the Act does not authorize suits against individuals; (2) Plaintiff fails to allege actual damages; and (3) the disclosures did not violate the Act. See Defs.' MTD at 20–25. As set out below, Defendants go three for three.

1. *Proper Defendants*

To start, the Act "creates a cause of action against only federal government agencies," not individual officials like Artis, Hardy, and Staton. See Abdelfattah v. DHS, 787 F.3d 524, 533 n.4 (D.C. Cir. 2015); Dick, 67 F. Supp. 3d at 176 ("[T]he law is clear that only federal agencies, not individuals, are the proper defendants for a Privacy Act cause of action."); see also 5 U.S.C. § 552a(g)(1) (authorizing suit against "agency"). Courts, as a result, routinely dismiss these claims when they are lodged against individual defendants. See, e.g., Abdelfattah, 787 F.3d at 533 n.4 (affirming *sua sponte* dismissal of Privacy Act claims against individual officials). To

the extent these claims are asserted against any individual Defendant other than the agency, see Compl., ¶ 5, they fail as a matter of law.

### 2. *Actual Damages*

Even if the Act allows for a cause of action against the VA, represented here in the person of its Secretary, Plaintiff still does not prevail. As mentioned above, a party can recover under the Act only if he establishes "actual damages." 5 U.S.C. § 552a(g)(4). Such damages, the Supreme Court has explained, are "limited to proven pecuniary or economic harm" and "must be specially pleaded." FAA v. Cooper, 566 U.S. 284, 295, 299 (2012). By contrast, non-economic damages, including "loss of reputation, shame, mortification, injury to the feeling and the like" are not covered under the Act. Id. at 296–99. A plaintiff, moreover, must allege "actual damages" connected to a violation of the Act. See Doe v. Chao, 540 U.S. 614, 620–27 (2004). Put differently, he "must establish not only that he was 'adversely affected' by the improper disclosure, but also that he suffered 'some harm for which damages can reasonably be assessed.'" Mulhern v. Gates, 525 F. Supp. 2d 174, 181–82 (D.D.C. 2007) (quoting Doe, 540 U.S. at 621).

Plaintiff has not met that burden here. To begin, the Complaint is devoid of allegations that either incident — *i.e.*, the disclosure of his personnel records or of his pending disciplinary action — caused him to suffer any actual damages. See Cooper, 566 U.S. at 295 (special damages "must be specially pleaded"). The best Plaintiff can do is point out in his Opposition that the second disclosure led to his termination, loss of benefits and wages, as well as criminal charges. See Pl. Opp. at 29 (citing Compl., ¶¶ 47–48). Yet, the paragraphs in the Complaint on which he relies do not contain any allegations that either purported violation of the Act caused him pecuniary injury. See Middlebrooks v. Goodwin Corp., 722 F. Supp. 2d 82, 87 n.4 (D.D.C.

15

2010) ("[P]laintiff failed to include these allegations in her complaint, and plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss."); Perkins v. Vance-Cooks, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations in this manner."). Further, it is implausible for Plaintiff to claim that the disclosures of information — rather than his admitted use of physical force against a visitor — resulted in the monetary damages here. See Iqbal, 556 U.S. at 678.

        3. *Violations*

DeLeon's claims hit yet another snag: they fail to plead any underlying violation of the Act. Start with the allegation that Artis reviewed Plaintiff's personnel records with HR staff. See Compl., ¶¶ 15, 44. As noted, Congress articulated a number of exceptions to the Act's disclosure restrictions. See 5 U.S.C. § 552a(b)(1)–(12). Defendants invoke § 552a(b)(1), which allows for intra-agency disclosure of records to officers and employees "who have a need for the record in the performance of their duties." Defs.' MTD at 23–24. In considering a disclosure under this exception, "[w]hat must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly." Bigelow v. U.S. Dep't of Def., 217 F.3d at 877; accord Doe v. DOJ, 660 F. Supp. 2d 31, 44–46 (D.D.C. 2009).

The first disclosure here squarely implicates this exception. Readers might recall that Artis reviewed Plaintiff's personnel records in May 2018. See Compl., ¶ 15. At that time, he managed the Physical and Security Training section — the section where deLeon worked. Id., ¶ 13. He, in effect, supervised Plaintiff. Additionally, he was aware that deLeon had been injured in a parking-lot incident in which he sustained several injuries. Id., ¶¶ 9, 14. He asked Plaintiff to submit agency paperwork that would inform management of the injured employee's

16

capabilities. Id., ¶ 14. DeLeon, however, refused. Id. Only then did Artis review Plaintiff's records. Id. DeLeon nowhere alleges that Artis did so for purposes unrelated to his duties. Id., ¶¶ 16, 42–44. Defendants, in turn, maintain that such a review would fall exclusively within Artis's management role — that is, it would contribute to his understanding his subordinate's medical limitations. See Defs.' MTD at 23–24 (citing 5 U.S.C. § 552a(b)(1)). Tellingly, Plaintiff fails to challenge this position in his Opposition. See Pl. Opp. at 28–29.

As for the second purported disclosure, the Court need not look to any of the statutory exceptions. The Act prohibits the nonconsensual disclosure of "any record which is contained in a system of records by any means of communication." 5 U.S.C. § 552a(b). It defines "system of records" as "a group of any records under the control of any agency from which information is <u>retrieved</u> by the name of the individual or by some [other] identifying [information]." Id. § 552a(a)(5) (emphasis added). This definition — which incorporates the requirement that information "is retrieved" — has given rise to the so-called "retrieval rule." Mulhern, 525 F. Supp. 2d at 183.

Simply put, this rule provides that the statute "only covers [the nonconsensual] disclosures of information which was either directly or indirectly retrieved from a system of records." Doe v. U.S. Dep't of Treasury, 706 F. Supp. 2d 1, 6 (D.D.C. 2009) (quoting Fisher v. Nat'l Insts. of Health, 934 F. Supp. 464, 473 (D.D.C. 1996)). From this, it follows that the statute does not prohibit the disclosure of information acquired from independent sources — *e.g.*, "observation, office emails, discussions with co-workers and the 'rumor mill'" — "even if the information disclosed is also contained in agency records." Cloonan v. Holder, 768 F. Supp. 2d 154, 164 (D.D.C. 2011); see Krieger v. DOJ, 529 F. Supp. 2d 29, 47 (D.D.C. 2008) (finding no violation where agent disclosed information — derived from firsthand impressions — outside of

17

agency). At its core, this rule ensures that the Act "does not create a monastic vow of silence which prohibits governmental employees from telling others what they saw and heard merely because what they saw or heard may also be a topic of a record in a protective file." Cloonan, 768 F. Supp. 2d at 164 (quoting Krieger, 529 F. Supp. 2d at 47).

DeLeon's beef is that Artis allegedly informed Dadey that the VA had taken disciplinary action against him. See Compl., ¶ 44. Yet, as Defendants point out, nowhere does deLeon maintain that Artis retrieved any record in the course of making that statement. See Defs.' MTD 24–25; Compl., ¶¶ 42–44. Nor does he even attempt to rebut this position in his Opposition. See Pl. Opp. at 28–29. Further, it is important to remember that Artis had personal knowledge of Plaintiff's physical altercation with Dadey and would have known about any ensuing disciplinary action. See Compl., ¶ 31. As several courts have explained, the disclosure of information acquired from an independent source — including personal knowledge — does not violate the Act. See, e.g., Cloonan, 768 F. Supp. 2d at 164. The Court will thus dismiss both of Plaintiff's claims under the Act.

   C.  Count IV

DeLeon's final count is anchored in the Fourth Amendment's guarantee against unreasonable seizures. See Compl., ¶¶ 45–49. He alleges that Defendants conspired to violate this constitutional provision by causing his arrest following the February 28 incident with visitor Dadey. Id., ¶ 47. This one fares no better than the others.

At the outset, the Court notes that, as a general matter, only governmental actors can violate the Fourth Amendment. And although Defendants are federal agents employed by the VA, MPD inflicted the purported constitutional injury here, see Compl., ¶¶ 45–49 — i.e., the unlawful detention of Plaintiff. Defendants arguably can incur liability for a Fourth Amendment

violation in a case of this kind by conspiring with MPD.  Cf., e.g., Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 435 (7th Cir. 1986) ("Although private parties call on the aid of state law 'without the grounds to do so', when the private decision may 'in no way be attributed to a state rule or a state decision', the private parties are not state actors.  There must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal.") (citation omitted) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 940 (1982); then citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)).  To support a civil-conspiracy claim, the Complaint must present factual allegations of an actual effort or plan among Defendants and MPD to violate Plaintiff's constitutional rights.  See Morgan v. Dist. of Columbia, 550 F. Supp. 465, 470 (D.D.C. 1982).

This does not exist here.  As evidence, deLeon points to Artis's call to the police following the altercation, as well as his "thumbs up" to the officers and his unsubstantiated "personal relationship" with them.  See Compl., ¶¶ 31, 47.  He also alleges that Artis "coached" Dadey on what to say to the police and separately "pressure[d] the MPD to pursue assault charges."  Id., ¶ 47.  As for Hardy and Staton, deLeon offers only the bare assertion that they had knowledge of and consented to Artis's actions.  Id.  These allegations are simply not enough.  They fall far short of raising a plausible inference that any Defendant was part of a concerted agreement with the police to violate his constitutional rights.  See Brady v. Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.").  Plaintiff's Fourth Amendment claim, therefore, fails as a matter of law.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 14, 2020